**STATE OF VERMONT**
**ENVIRONMENTAL COURT**

|                              |     |                          |
|------------------------------|-----|--------------------------|
|                              | }   |                          |
| **Re: Bethel Mills, Inc.**   | }   | **Docket No. 243-11-05 Vtec** |
| **Jurisdictional Opinion #3-97** | } |                          |
|                              | }   |                          |

## Decision on Appellant's Motion to Alter or Reconsider

Appellant Bethel Mills, Inc. asks the Court to alter and/or reconsider the Decision dated April 19, 2006 in the above-captioned docket ("April 19 Decision"), in which the Court rendered summary judgment against Appellant, holding that the so-called Mills Parcel is subject to Act 250 jurisdiction because it is "involved land," as that term is used in former Environmental Board Rule 2(F). In doing so, the Court upheld the appealed-from Jurisdictional Opinion of the District 3 Environmental Coordinator dated October 20, 2005, which concluded that "because the Mills parcel is contiguous to the lumber yard, was purchased prior to the issuance of the Land Use Permit and serves a purpose for blocking light, noise and screening from the nearby residential homes, it is involved land and Act 250 jurisdiction attaches." Jurisdictional Opinion #3-97 Bethel Mills, Inc., at 4 (District 3 Envtl. Coordinator, Oct. 20, 2005). Appellant is represented by C. Daniel Hershenson, Esq. The factual and procedural backgrounds set forth in our April 19 Decision, to the extent that they are not repeated here, are incorporated here by reference.

## Procedural Background

Appellant has attempted in several different proceedings to obtain a ruling that the Mills Parcel, a 0.61-acre lot improved with a residential structure and outbuilding abutting Appellant's lumberyard, is not associated with its adjacent commercial facilities and is therefore not encumbered by Land Use Permit (LUP) #3W0898. In its original application for an Act 250 permit for renovations and improvements,[1] Appellant asked that the District Commission limit jurisdiction so as not to include the Mills Parcel. The District Commission declined to do so, concluding that "the buildings on the residential lot [i.e.: the Mills Parcel] serve to buffer the noise and the light produced on the lumber storage lot," and that "the 'aura' of the lumber

---

[1] As noted in our April 19 Decision and the 2004 District Commission decision referenced therein, these renovations and improvements were completed in the 1980s. Appellant purchased the adjacent residential Mills parcel in 1998. Appellant subsequently filed its Act 250 application for an after-the-fact permit on August 4, 2003.

storage lot spills onto the residential lot." District Commission Findings and Conclusions dated March 3, 2004, at 13.

The Commission also denied Appellant's subsequent request to apply a Stonybrook[2] analysis to alter LUP #3W0898 so as to exclude the Mills Parcel from Act 250 jurisdiction, stating that:

> It is the permittee's burden to produce evidence convincing the Commission there is no "nexus" between the two tracts of land regarding the residential and commercial lot. There is a "nexus," a functional relationship, between the two tracts of land, relating directly to the production of noise and lighting on the industrial lot. The residential lot clearly provides a buffer for the residential neighborhood to the north. The permittee may not have purchased the residential lot with this in mind, but the "nexus" exists.

District Commission Mem. of Decision dated May 21, 2004, at 3.

The Commission's May 21, 2004 Decision was accompanied by LUP #3W0898(Altered), together with amended Findings and Conclusions, which repeated the Commission's earlier findings and conclusions regarding the Mills Parcel.

Appellant appealed the altered LUP and amended findings to the former Environmental Board, which denied Appellant's request to limit the scope of the permitted project, stating that "[n]oise and light from the Project do affect the residential land, and the house, outbuildings and vegetation on the Mills Parcel provide some screening—both visual and aural—of the Project. Accordingly, the Board cannot grant Bethel Mills' request to reduce the scope of the permitted project under Stonybrook." Envtl. Bd. Findings, Conclusions, and Order in LUP #3W0898(Altered)-EB, at 16 (Vt. Envtl. Bd., Aug. 4, 2005).

Appellant subsequently requested a jurisdictional opinion (JO) from the District 3 Environmental Coordinator. On October 20, 2005, the Coordinator issued the requested JO, concluding that "because the Mills parcel is contiguous to the lumber yard, was purchased prior to the issuance of the Land Use Permit and serves a purpose for blocking light, noise and screening from the nearby residential homes, it is involved land and Act 250 jurisdiction attaches." Jurisdictional Opinion #3-97 Bethel Mills, Inc., at 4 (District 3 Envtl. Coordinator, Oct. 20, 2005). Our April 19 Decision upholding this Jurisdictional Opinion is the subject of Appellant's pending motion to alter or reconsider.

---

[2] See Re: Stonybrook Condominium Owners Assoc., Declaratory Ruling #385 (Vt. Envtl. Bd., May 18, 2001).

**Discussion**

Appellant asks us to reconsider our holding that the Mills Parcel is "involved land" under former Environmental Board Rule 2(F)(1). EBR (2)(F)(1) states in its entirety:

> (F) "Involved Land" includes: (1) The entire tract or tracts of land, within a radius of five miles, upon which the construction of improvements for commercial or industrial purposes will occur, and <u>any other tract, within a radius of five miles,</u> to be used as part of the project or <u>where there is a relationship to the tract or tracts upon which the construction of improvements will occur such that there is a demonstrable likelihood that the impact on the values sought to be protected by Act 250 will be substantially affected by reason of that relationship.</u> In the event that a commercial or industrial project is to be completed in stages according to a plan, or is part of a larger undertaking, all land involved in the entire project shall be included for the purpose of determining jurisdiction.

EBR 2(F)(1) (emphasis added).

Noting that one of the values sought to be protected by Act 250 is aesthetics (10 V.S.A. § 6086(a)(8)), we stated that:

> The Mills Parcel, with its residential structure and outbuilding, sits between a commercial lumber yard and several residential properties. The evidence presented shows that the Mills Parcel marks the end of the Industrial zoning district and the beginning of the Village Residential district. Thus, the Mills Parcel acts as a buffer, which Appellant owns and controls, between its industrial development and the adjoining residences in the Village Residential district.

Decision of April 19, 2006, at 8.

Appellant argues in the pending motion that while there may be a relationship between the two contiguous parcels, the record "is devoid" of any evidence showing a demonstrable likelihood that that relationship will affect the permitted project's impact on aesthetic values. We disagree.

Appellant makes two arguments in support of its pending motion. The first is that the evidence the Court relied upon was either mere <u>dicta</u> or non-existent. Appellant characterizes as "<u>dicta</u>" the Environmental Board's statement that "[n]oise and light from the Project do affect the residential land, and the house, outbuildings and vegetation on the Mills Parcel provide some screening—both visual and aural—of the Project." Envtl. Bd. Findings, Conclusions, and Order in LUP #3W0898(Altered)-EB, at 16 (Vt. Envtl. Bd., Aug. 4, 2005). Appellant fails, however, to include to the next sentence: "Accordingly, the Board cannot grant Bethel Mills' request to reduce the scope of the permitted project under <u>Stonybrook</u>." <u>Id</u>. The Board's statement

regarding the function of the Mills Parcel in providing visual and aural screening for the noise and light from the permitted project is thus no mere obiter dictum, but rather a statement of the reason and rationale for the Board's denial of Appellant's appeal of the altered LUP.  Nor was that statement the Board's only mention of the Mills Parcel.  Findings 64–67 of the Environmental Board Findings, Conclusions, and Order in LUP #3W0898(Altered)-EB read as follows:

> 64. The house and attached barn on the Mills Parcel provide some mitigation of the Project's noise impacts.
>
> 65. Light from the Project does illuminate part of the Mills Parcel, and structures on the Mills Parcel partially block this light from view from some vantage points.
>
> 66. The home and attached barn on the Mills Parcel screen or partially screen the Project from at least three and possibly as many as five neighbors, including Ms. Pavone.
>
> 67. A row of deciduous and some evergreen trees and shrubs extends across a portion of the rear Mills Parcel boundary, and partially screens the large storage rack nearest the railroad tracks from view from Ms. Pavone's property.

Id. at 8.

We relied upon these conclusions from the prior Board and District Commission proceedings, as well as the facts Appellant presented to us in this separate jurisdictional proceeding, in concluding that it was now undisputable that the Mills Parcel provides a specific and significant mitigation of the aesthetic impacts of the pre-permit improvements upon the residences located in close proximity to Appellant's commercial facility.  In light of the above, we decline Appellant's invitation to classify the Board's determinations as mere obiter dicta.

Appellant next asserts that this Court was mistaken in stating that "the District Commission noted Appellant's ownership of the Mills Parcel several times in its March 3, 2004 Findings and Conclusions under Act 250 Criterion 8."  April 19 Decision at 8.  In support of the above quoted statement, the Court cited to the District Commission Findings and Conclusions dated March 3, 2004, at 5, 6, and 8.  Appellant asserts that "[n]owhere on Page 5 of the District Commission decision is the Mills Parcel even mentioned nor is such mention made of the Mills Parcel or its structures on Page 6 of the District Commission decision.  Finally, on Page 8 of the

4

District Commission decision, the Mills Parcel is again not mentioned." Appellant's Mot. to Amend and/or Reconsider, at 2. Appellant's assertion is inaccurate.

On page 5 of the District Commission Findings and Conclusions dated March 3, 2004, Finding 15 states that "The site contains a number of buildings: the upper and lower warehouses, a shingle shed, plywood shed, center shed, P.T. shed, track shed and barn. The entire site is paved. Applicant also owns an adjoining residential lot to the east." (emphasis added). Appellant's failure to recognize this Finding as a mention of the Mills Parcel is perhaps understandable, because the Mills Parcel in fact lies westerly of the lumberyard. However, as the Mills Parcel is the only adjoining residential lot owned by Appellant, it should be clear the Commission was referring to it in Finding 15. Furthermore, Finding 18 on page 5 of these same District Commission Findings states that "the noise from Bethel Mills did not exceed 55dBA at the Pavone property line." (emphasis added). As the Mills Parcel lies between the Bethel Mills lumberyard and the Pavone property, Finding 18 on page 5 is referencing noise that must travel from the lumberyard, across the Mills Parcel, and onto the adjoining residential parcel owned by Pavone.

On page 6, the District Commission, in its Finding 25 states: "[t]here is no landscaping between the warehouse and the Pavone property line. The warehouse is approximately 20,000 square feet in size. A 130-foot wall of the building, with no windows, faces the Pavone land. The warehouse is less than 20 feet from the property line. The residential lot, owned by the Applicant, is between the warehouse and Pavone lot line. The residential lot is over 90 feet wide." (emphasis added). The residential lot referenced in Finding 25 is, of course, the Mills Parcel. Thus, the Mills Parcel is mentioned on page 6, contrary to Appellant's assertion, and is mentioned in a manner material and relevant to the issue decided here.

Finally, on page 8, the District Commission in its Conclusions regarding mitigation, noted that "there are a number of buildings between the Pavone property and the warehouse." Those buildings consist of the residential structure and outbuilding on the Mills Parcel. We are unaware of any buildings, other than those owned by Appellant and on the Mills Parcel, between the Pavone property and Appellant's warehouse.

Appellant's second argument appears to be that, because the noise standards in the altered LUP "are applicable whether or not the Mills Parcel is subject to Act 250 jurisdiction,"[3] any aural screening provided by the Mills Parcel is irrelevant. Appellant also notes that the Board concluded "that the general visual aspects of the Project fit the visual context of their surroundings and cause no adverse aesthetic impact." Envtl. Bd. Findings, Conclusions, and Order in LUP #3W0898(Altered)-EB, at 11 (Vt. Envtl. Bd., Aug. 4, 2005). Appellant argues that since the Board concluded that there is no adverse visual aesthetic impact and the mandated noise levels apply with or without the Mills Parcel, "there is no demonstrable likelihood that the Mills Parcel has any impact whatsoever on the values sought to be protected by Act 250 as those terms are defined in Environmental Board Rule 2(F)(1)." Appellant's Mot. to Amend and/or Reconsider, at 3.

If the relationship between the Mills Parcel and the lumberyard did not affect the aesthetic impact of the lumber yard operation, then the Mills Parcel would not qualify as involved land under EBR 2(F)(1). However, the facts presented to us, even when viewed in a light most favorable to Appellant, cause us to conclude just the opposite. The Mills Parcel, situated between the Pavone residence and the lumberyard, provides both visual and aural screening for the lumberyard, and thus stands in a relationship to the lumberyard that substantially affects the lumberyard's aesthetic impact upon the nearby residences.

This Court is not adverse to declining jurisdiction, and is sympathetic to property owners, such as Appellant here, who did not intend to take any affirmative step that would trigger Act 250 jurisdiction upon its most recently acquired property. But the facts established in the prior proceedings and the facts presented to us here by Appellant, including the procedural fact that Appellant acquired the Mills property before seeking its lumber yard permit, force us to conclude that Act 250 jurisdiction attaches to the Mills Parcel, because the Mills Parcel constitutes "involved land" as that term is defined by EBR 2(F)(1).

For the foregoing reasons, Appellant's Motion to Alter or Reconsider is **DENIED**.

Done at Berlin, Vermont this 17th day of July, 2006.

_____
Thomas S. Durkin, Environmental Judge

---

[3] Appellant's Mot. to Amend and/or Reconsider, at 3.